SAMEDAN OIL CORPORATION, Appellant,

v.

INTRASTATE GAS GATHERING, INC., Appellee.

No. 12–99–00242–CV.

Court of Appeals of Texas, Tyler.

Sept. 28, 2001.

---

Scott Patrick Stolley, Beverly Burlingame, Dallas, Mike Hatchell, Ramey & Flock, Tyler, Timothy L. Gehl, King & Pennington, L.L.P., Houston, for appellant.

Deborah J. Race, Ireland, Carroll & Kelley, P.C., Tyler, Joe Griffith, Griffith & Griffith, PC, Eugene B. Wilshire, Keavin D. McDonald, Wilshire Scott & Dyer, P.C., Houston, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

DAVIS, Chief Justice.

Intrastate Gas Gathering, Inc. and Samedan Oil Corporation have both filed motions for rehearing. Samedan Oil Corporation's motion for rehearing is granted in part and denied in part. Likewise, Intrastate Gas Gathering, Inc.'s motion for rehearing is granted in part and denied in part. The opinion and judgment of June 20, 2001 are hereby withdrawn and the following opinion and judgment are substituted in their place.

Appellant, Samedan Oil Corporation ("Samedan"), appeals the trial court's judgment following a jury trial. The jury returned its verdict and found Samedan liable for common law fraud, tortious interference with contract, and violation of the Texas Deceptive Trade Practices Act[1] ("DTPA"). The jury awarded actual damages of $5 million and exemplary damages of $5 million. Appellee, Intrastate Gas Gathering, Inc. ("Intrastate"), elected to recover only under the fraud and tortious interference claims. In five issues and multiple sub-issues, Samedan complains that the evidence is insufficient to support the trial court's judgment for fraud, tortious interference, and actual damages, that the verdict is tainted by a multi-theory jury charge, and that the evidence is insufficient to support an alternative judgment under the DTPA. We affirm in part, and reverse and remand in part.

This is the second appeal of this case to this Court. Previously, Intrastate appealed the trial court's grant of Samedan's motion for directed verdict as to its DTPA, fraud, abuse of process, breach of contract and tortious interference claims. Samedan cross-appealed the trial court's directed verdict as to its breach of contract counterclaim. On appeal, this Court held that there was some evidence to support

---

**1.** TEX. BUS. & COMM.CODE § 17.41 *et. seq* (Vernon 1987).

Intrastate's causes of action for tortious interference and common law fraud, and that Intrastate qualified as a consumer under the DTPA. *See Intrastate Gas Gathering, Inc. v. Samedan Oil Corporation,* No. 12–95–00225–CV, at 5–6, 8, 11 (Tex. App.—Tyler, March 31, 1997, writ denied) (unpublished opinion) (the "first appeal"). The Court further sustained Samedan's cross-point, finding that its counterclaim could be presented at retrial. *Id.* at 13. However, the Court affirmed the trial court's directed verdict as to Intrastate's breach of contract claim because Intrastate had failed to cite any authority to support its position. However, the Court did not address the merits of Intrastate's breach of contract claim. *Id.* at 11. The Court also affirmed the trial court's directed verdict as to abuse of process, which is not at issue in the present appeal. *Id.* at 10. The present appeal stems from the retrial of this matter.

### FACTUAL BACKGROUND

Intrastate's predecessor in interest and Samedan executed a gas purchase agreement in 1981 and a gas transportation agreement in 1989.[2] In 1990, the rights and obligations under these agreements were assigned to Intrastate. Intrastate began operating the Houston County Gathering System (the "System"), which consisted of a gas processing plant, its associated gas pipeline, and the rights to buy, transport and process gas produced from the wells connected to the System. Samedan owned several wells connected to the System. At least three separate third-party wells (the "third-party wells") were also connected to the system during the relevant time period.

After a series of disputes between Samedan and Intrastate, Samedan shut in its natural gas wells and sued Intrastate for breach of the 1981 gas purchase agreement. This was the first of several lawsuits between the parties. A subsequent court-ordered mediation resulted in a settlement agreement, which was finalized and signed by the parties in March 1994 (the "Settlement Agreement"). Paragraphs 1 through 3 of the Settlement Agreement identified the parties and released all the claims they had against one another in the pending lawsuits. Paragraph 4, which sets forth the basic business terms of the settlement agreement, provided as follows:

4. *Terms of the Settlement.* In consideration for this release:

(a) Samedan, Greenbrier, Christeve and Intrastate have terminated the August 4, 1981 Gas Purchase Agreement effective February 14, 1994;

(b) Intrastate shall pay Samedan $100,000.00 in cash on February 21, 1994. Intrastate shall pay Samedan an additional $45,000 in cash either (i) thirty (30) days after the first day during which Samedan delivers one million cubic feet (1MMCF) of gas to Intrastate's gas processing plant in Houston County or (ii) on August 15, 1994, whichever occurs first;

(c) The parties will dismiss with prejudice their claims against each other;

(d) Intrastate shall assign to Samedan one hundred percent (100%) ownership interest in the Houston County Gathering System with full warranty of title. The assignment shall be freely assignable by Samedan. Intrastate shall continue to own the

---

2. In this context, a gas purchase agreement is an agreement by one party to purchase gas owned by another party. On the other hand, a gas transportation agreement is, generally, an agreement by one party to have its gas transported through a gas pipeline owned by another party.

processing plant and the bullet tank. The Effective Date of the assignment shall be February 14, 1994. On the date the assignment is signed (the "Closing Date"), all revenues, except liquid sales and revenues from gas purchased by Intrastate from third parties and transported pursuant to sub-paragraph (e)(6) below, attributable to the Houston County Gathering System shall pass to Samedan as of the Effective Date and all other attributes of ownership shall pass as of the Closing Date. All reasonable costs and expenses, except overhead, necessarily incurred or accrued in accordance with Generally Accepted Accounting Principles (GAAP) by Intrastate in operating the system subsequent to the Effective Date shall be paid by Samedan. All such costs and expenses incurred or accrued prior to the Effective Date shall be paid by Intrastate.

(e) Samedan and Intrastate shall enter into a processing agreement containing the following provisions:

(1) The processing agreement shall be for three (3) years beginning with the month Samedan brings on line or attempts to bring on line, as a reasonable and prudent operator would so attempt in the same or similar circumstances, the last well currently shut in by Samedan. Samedan intends to bring on line or to attempt to bring on line all six wells that are currently shut in;

(2) Samedan will deliver pipeline quality gas to Intrastate's plant;

(3) Samedan will operate its wells as a reasonable and prudent operator, including workovers and evalua-

tions of workovers on any existing wells;

(4) Intrastate shall have the right to process Samedan's gas, sell the products extracted from Samedan's gas and receive the proceeds from the sale of those products;

(5) Intrastate shall keep Samedan whole on the liquids extracted at the plant on a heating content basis;

(6) Intrastate shall be allowed to continue to purchase gas from third parties in Houston County and Samedan shall lease Intrastate the capacity to transport that gas through the Houston County Gathering System for $.10 per MMBTU, plus Intrastate's proportionate share of Samedan's costs, including overhead to treat, compress, dehydrate or otherwise make the gas ready for sale or use based on heating content throughput;

(7) Intrastate shall not be allowed to connect any additional wells to the gathering system without Samedan's prior written consent; and

(8) If Intrastate fails to pay Samedan the fees and expenses described in paragraph (e)(6) above within 30 days of receiving Samedan's invoice, Samedan shall have the right to shut in Intrastate's production until the fees and expenses are paid.

The Settlement Agreement further, in pertinent part, provided:

9. *Entire Agreement and Amendments.* The parties agree that this settlement agreement contains the full and complete agreement of the parties, and all prior negotiations and agreements pertaining to the subject matter of this settlement agreement are merged into this set-

tlement agreement. The parties acknowledge that no representation of fact or opinion has been made by any other party to this settlement agreement or anyone acting in such party's behalf to induce this compromise with respect to the extent or nature of the relief sought or as to the likelihood of future developments or recovery from the litigation. Each party hereto expressly disclaims reliance upon any facts, promises, undertakings or representations made by any other party or his attorneys prior to or contemporaneous with the date of the execution of this settlement agreement.

■ The separate processing agreement contemplated in paragraph (4)(e) was never finalized. Samedan proposed a gas processing agreement, but it contained a non-negotiable provision whereby the agreement would terminate if Samedan was ever classified as a utility. Intrastate was concerned that since the pipeline crossed several highways and would be used to transport third-party gas, the likelihood of Samedan being classified a utility was a near certainty. Intrastate rejected Samedan's proposed processing agreement on the grounds that this supposedly non-negotiable provision was not referenced in paragraph 4(e) of the Settlement Agreement[3] and was, in essence, a "self-destructing" provision inconsistent with the terms of the Settlement Agreement.

As owner of the gas pipeline, Samedan was required by law to file a T-4 pipeline application and to satisfy certain reporting requirements to the State of Texas (the "State"). It is undisputed that Samedan did not file its pipeline application with the State until approximately five months after it became the owner of the pipeline. On August 8, 1994, when Samedan finally did file its application, it failed to make reference to the processing plant or to the fact that the pipeline was ever used to carry any gas other than its own.[4] Moreover, at trial, Intrastate presented extensive evidence that Samedan had altered its methods of calculating production, which it was required to report to the State. Intrastate argued that Samedan's purpose behind altering its production calculation methods to show sales volumes[5] in concert with its failure to file its T-4 application for five months was to hide from the State the fact that it was operating a gas pipeline, which crossed major highways and was being used to transport third-party gas. It is apparent that the jury concluded that Samedan was less than candid to the State in these respects.

3. Samedan claims that the "utility termination" clause was simply its attempt to negotiate in its best interest and that it should not be faulted for being a good negotiator. However, a contract to enter into a future contract must specify all of its material and essential terms, and leave none to be agreed upon as a result of future negotiations. *See Parker Chiropractic Research Foundation v. Fairmont Dallas Hotel Company,* 500 S.W.2d 196, 201 (Tex.App.—Dallas 1973, no writ).

4. At this time, Samedan had, only days before, disconnected the pipeline from the processing plant and the third-party wells. Thus, by its recent actions, Samedan was no longer carrying third-party gas, nor was the section of the pipeline then in use crossing any major highways. Consequently, based on the information Samedan provided in its T-4 application, it was not classified as a utility. Intrastate argues, and the jury apparently concluded, that the timing of Samedan's filing of its T-4 application so soon after its disconnection of the pipeline from the processing plant and the third-party wells was more than mere coincidence and was an indication of a disingenuous motive.

5. Intrastate argues that by reporting the sales volumes, Samedan was able to conceal that it was no longer selling at the lease, which would have been a signal to the State that Samedan was operating a pipeline.

Intrastate further put forth evidence that Samedan rerouted the flow of gas from the third-party wells, which served to deny those wells sufficient compression to be carried through the pipeline to be processed by Intrastate. By its denying the necessary compression, Samedan effectively shut in the third-party wells. At or about this same time, Samedan purported to cancel its gas transportation agreement with Intrastate. Intrastate contends that the purpose of cancelling this transportation agreement was to prevent Intrastate from being able to process casinghead gas produced by Samedan's wells.[6] Further still, testimony was presented to the trial court that an inordinate amount of liquid condensate was sent through the pipeline from Samedan's wells to Intrastate's processing facility. The evidence reflects that this could not have occurred without some sort of affirmative activity on Samedan's behalf.[7] Intrastate presented evidence that the condensate had the effect of severely hindering Intrastate's ability to process gas, if not disabling the processing plant altogether. Samedan did, pursuant to the settlement agreement, send gas to the processing plant. However, the record sets forth that this gas was not "pipeline quality" and contained a significant amount of condensate. Ultimately, Samedan claimed that Intrastate had breached the Settlement Agreement by not making a $45,000 payment for the gas delivered for processing, and physically disconnected the processing plant and third-party wells from the pipeline. Consequently, Intrastate filed the present lawsuit.[8]

In its lawsuit, Intrastate alleged that Samedan's actions constituted tortious interference with contractual relationships, common law fraud, violations of the DTPA, abuse of process, breach of contract, conversion, usury and trespass. Samedan filed a counterclaim alleging breach of contract. As set forth above, the trial court's directed a verdict against both parties on their respective claims and this matter came before this Court for the first time. This Court reversed and the case was remanded for a new trial.

Upon retrial, Intrastate's claims of fraud, tortious interference and violations of the DTPA were submitted to the jury along with Samedan's breach of contract counterclaim. The jury found for Intrastate on all of its claims, found against Samedan on its counterclaim, and awarded Intrastate $2.5 million in out-of-pocket damages, $2.5 million in interference damages, $150,000 in additional damages arising from Samedan's knowing violations of the DTPA, and punitive damages totaling $5 million. Intrastate requested a judgment based on its fraud and tortious interference claims.

### FRAUD–EVIDENTIARY SUFFICIENCY

### Standard of Review

In reviewing a no evidence point, we must consider only the evidence and infer-

---

6. Casinghead gas is produced along with extraction of oil from the ground and is very profitable to process. Apparently, Samedan disputed whether its "gas," which it agreed to let Intrastate process pursuant to paragraph 4(e) of the Settlement Agreement, included casinghead gas.

7. Testimony establishes that for condensate to be sent through the pipeline, a switch had to be thrown, thereby causing the condensate separators to be bypassed.

8. Following its execution of the Settlement Agreement, Intrastate sold its physical plant and storage tank and assigned its contractual rights to the plant to Excel Resources, Inc. ("Excel") in February 1994. However, Excel subsequently reassigned its ownership control to Intrastate in July 1994. Excel's reassignment to Intrastate was backdated to read "February 1994" in an apparent attempt to restore control to Intrastate as if the assignment to Excel had never taken place.

ences that tend to support the jury's verdict, disregarding all contrary evidence and inferences. *See Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex. 1998). We may only sustain a "no evidence" point when the record discloses one of the following: (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). It is not within our power to second guess the fact-finder unless only one inference can be drawn from the evidence. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 461 (Tex. 1992). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

On the other hand, when evaluating a factual sufficiency challenge, we will consider and weigh all of the evidence in the case, both evidence supporting the verdict and evidence which tends to contradict the facts upon which the jury based its verdict. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We may not substitute our conclusions for those found by the jury and will reverse only if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

In its first issue, Samedan contends that the evidence is insufficient to support a fraud finding. Samedan first attempts to distinguish among what it claims are three different theories of fraud submitted in this matter, namely, fraudulent misrepresentation, fraudulent concealment, and fraudulent promise. Samedan argues that Intrastate has never offered evidence to support any theory but fraudulent promise. However, Samedan argues at length as to various reasons why each theory is fatally flawed. We will first address Samedan's assertion that Intrastate tried a case based on three separate theories of fraud. We will then address Samedan's evidentiary sufficiency arguments as they relate to fraud.

a. *Distinctions Among Fraud Theories*

■ In general, fraud consists of: (1) a material representation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of its truth, (4) which was made with the intent that it be acted upon by the other party, (5) which was acted upon by the party in reliance on the representation, and (6) which caused injury to the party. *See Sears, Roebuck & Company v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994). The element of misrepresentation can be demonstrated in a variety of ways including by way of false promise or by way of concealment by silence. *See Kajima International, Inc. v. Formosa Plastics Corporation, USA,* 15 S.W.3d 289, 292 (Tex.App.—Corpus Christi 2000, pet. denied) (evidence of false promise satisfied misrepresentation element of fraud); *see also Fisher Controls International, Inc. v. Gibbons,* 911 S.W.2d 135, 140 (Tex.App.—Houston [1st Dist.] 1995, writ denied), *citing Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986) (holding that when circumstances impose a duty to speak and one deliberately remains silent, the silence is equivalent to a false misrepresentation). Thus, contrary to Samedan's contention, fraud by false promise and fraud by concealment are not fraud theories distinct from fraudulent misrepresentation, but rather are separate theories by which the

misrepresentation element of fraud can be proven.

 Samedan contends that since Intrastate has taken the position at trial that it was defrauded by a false promise, it cannot now broaden its case to encompass other fraud theories. A plaintiff's petition defines the issues in the lawsuit. *See Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex.1982). A petition is sufficient if it gives fair notice of the facts relied upon, enabling the defendant to prepare a defense. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000), *citing Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57, 60 (Tex.App.— Tyler 1995, writ denied). In the instant case, a review of the record indicates that Intrastate alleged in its pleadings that Samedan made promises in the Settlement Agreement, which it had no intent to perform, that Samedan made false representations in documents collateral to the Settlement Agreement, and that Samedan failed to disclose material facts. Therefore, we conclude that Intrastate's pleadings served as adequate notice to Samedan that Intrastate was alleging fraud and that the facts tending to show the misrepresentation element involved both false promise and concealment of material facts.

#### b. *Overview of Samedan's Evidentiary Sufficiency Challenges*

Samedan attacks Intrastate's evidentiary support for its fraud claim on several fronts. First, Samedan challenges the legal sufficiency of Intrastate's fraud claim, alleging that there is no evidence of fraudulent misrepresentation or omission. Samedan furthers its legal sufficiency argument, urging that both of Intrastate's theories used to prove misrepresentation by way of concealment are precluded as a matter of law because there exists no special relationship between the two parties. Next, Samedan contends that the jury finding on the element of reliance is legally insufficient because Intrastate disclaimed any reliance in the Settlement Agreement, barring proof on that element as a matter of law. Samedan's final legal sufficiency challenge asserts that the law of the case bars Intrastate from proving that Samedan breached the Settlement Agreement.

Turning to factual sufficiency, Samedan challenges the sufficiency of the evidence supporting fraud on a false promise theory. Finally, Samedan argues that the evidence submitted on the element of intent is factually insufficient.

#### c. *Legal Sufficiency Challenges to Fraud*

Samedan contends that there is no evidence of an affirmative fraudulent representation or omission. We disagree.

 As set forth above, either an act of concealment or a false promise can satisfy the misrepresentation element of fraud. *See Kajima*, 15 S.W.3d at 292; *see also Fisher Controls*, 911 S.W.2d at 140. Reviewing the record in the light most favorable to Intrastate and indulging every inference deducible from that evidence in Intrastate's favor, we conclude there is ample evidence to support misrepresentation on a false promise theory. The record reflects that Samedan made representations in the form of promises. Specifically, in the Settlement Agreement, Samedan represented that, in exchange for the pipeline, it would (1) deliver "its gas" to the plant for three years, (2) deliver it in pipeline quality, (3) bring its shut-in gas wells on-line as "a reasonable and prudent operator," and (4) provide pipeline capacity so that Intrastate would be able to perform its third-party contracts. Each of these written statements constitutes an affirmative representation in the form of a promise. The record further presents some evidence that by not delivering *all* of its

gas for three years, by not providing pipeline capacity so that Intrastate could transport third-party gas, and by failing to deliver pipeline quality gas, but rather, in some instances, condensate laden gas, Samedan did not perform its promises under the agreement.

 As to fraudulent concealment, Samedan argues that, absent a showing that it had a duty to disclose, there can be no fraudulent concealment. Absent a fiduciary or confidential relationship, there still exists a duty to disclose, namely, that when information is disclosed, full disclosure of the whole truth is required. *See Formosa Plastics Corporation U.S.A. v. Presidio Engineers and Contractors, Inc.,* 941 S.W.2d 138, 146–47 (Tex.App.—Corpus Christi 1995), *rev'd on other grounds,* 960 S.W.2d 41 (Tex.1998). Samedan argues that this theory is inapplicable because Intrastate tried a false promise case. However, as we have discussed, Intrastate's pleadings are adequate to give notice of fraud by concealment. *See Horizon/CMS Healthcare Corp.,* 34 S.W.3d at 897. The record contains evidence that, although Samedan agreed to sign a processing agreement, Samedan never disclosed that it intended to demand a self-destructing utility-termination provision, which was not one of the terms in paragraph 4(e) of the Settlement Agreement. Further, although Samedan promised to deliver third-party gas, it concealed its intent to effectively shut in that gas by rerouting it straight to the processing plant without compression. Further still, the record reveals that although Samedan represented that it would deliver its gas to the processing plant, Samedan did not disclose that it would later contend that its gas did not include casinghead gas or that it would claim no obligation to deliver casinghead gas for the entire three-year term.[9] Finally, Samedan impliedly represented that it would comply with the laws and reporting requirements pertaining to its operation of a 42 mile-long gas pipeline in accordance with the terms of the Settlement Agreement. Samedan's implied representation is grounded in an axiom of contract law that a contract that cannot be performed without violating the law is void and unenforceable *ab initio. See Franklin v. Jackson,* 847 S.W.2d 306 (Tex.App.—El Paso 1992, writ denied), *citing Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947). It follows that it is not unreasonable for a party to a contract to presume that the other party will perform his obligations pursuant to the contract in compliance with the law. The fact that Samedan did not reveal its intention to actively avoid utility classification when utility classification was a near certainty given the terms of the settlement agreement, considered in conjunction with the other evidence set forth above, constitutes some evidence of fraudulent concealment. Concluding that there is legally sufficient evidence that the representation element of fraud, either by concealment or by promise, is satisfied, and further conclud-

---

9. The record reflects that prior to the time period in question, Samedan's casinghead gas was included as gas processed by Intrastate and that no such distinction had previously been raised between gas well gas and casinghead gas. Literal interpretation of the word "gas" as used broadly in the Settlement agreement, when no exceptions are stated, includes all types of gas, including casinghead gas and gas well gas, even though the source of these two gasses is different. *See, e.g.* *Hutchings v. Chevron U.S.A.,* 862 S.W.2d 752, 756 (Tex.App.—El Paso 1993, writ denied) (casinghead gas *is gas* produced with oil in oil wells) (emphasis added), *citing* Williams and Meyers, Manual of Oil and Gas Terms, (8th ed.1991). It follows that the broad language in the Settlement Agreement that Samedan would "deliver ... gas to Intrastate's gas processing plant in Houston County," since it did not exclude any particular type of gas, included casinghead gas.

ing that Samedan, having made certain promises, did not perform as promised, we now turn to the issue of whether the evidence is legally sufficient to support the element of fraudulent intent.

Although failure to perform, standing alone, cannot establish fraudulent intent, slight circumstantial evidence of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent. *See Spoljaric*, 708 S.W.2d at 435. A party's intent at the time of the representation can be inferred from the party's subsequent actions. *Id.* at 434. In the case at hand, there is some evidence to support the element of fraudulent intent. A review of the record demonstrates that with Samedan's ownership and operation of the 42–mile–long gas pipeline in accordance with the terms of the Settlement Agreement, came almost certain utility classification. There was evidence that Samedan actively avoided filing its T–4 pipeline application for nearly five months, thereby failing to disclose its ownership of the pipeline to the State of Texas, which enabled it to avoid the almost certain resulting utility classification. The alterations in Samedan's method of calculating production is further evidence that would have allowed the jury to conclude that Samedan was attempting to hide its operation of the pipeline from the State. Furthermore, there was evidence that Samedan finally filed its T–4 application only days after it had disconnected the pipeline from the processing plant and the third-party wells. This enabled Samedan to claim that the section of the 42–mile pipeline in use at that time did not cross any public roads, nor did it transport any third-party gas, which resulted in Samedan not being classified as a utility. However, Dennis Miller, a Samedan Engineer, testified that had the T–4 application been timely filed in the months prior to August 1994, Samedan would have been required to disclose that the pipeline crossed public highways and that it was used to transport third-party gas. That Samedan filed its T–4 application so soon after its disconnection of the pipeline from the processing plant and the third-party wells, considered in conjunction with the limited scope of use and activity Samedan was then able to disclose in its T–4 application, could logically have been construed by the jury as some evidence of a disingenuous motive on Samedan's behalf. Therefore, the aforementioned evidence is sufficient to support the jury's finding of fraudulent intent.

Moreover, there was evidence that, if Samedan had honored its representations to Intrastate and, at the same time, had timely and accurately reported to the State how the pipeline was to be operated in accordance with the terms of the Settlement Agreement, utility status would have been a near certainty. The evidence that Samedan made this almost certain utility classification a terminating trigger to the processing agreement it had previously agreed upon, and which previously had contained no such condition, further bolsters the jury's conclusion that Samedan never intended to fulfill its obligations pursuant to the Settlement Agreement. Further, there was evidence upon which the jury could have relied that the gas Samedan did send through the pipeline for processing was not "pipeline quality," containing significant amounts of condensate, a condition, which the jury could have believed amounted to more than mere happenstance. We conclude that these subsequent events provide at least some evidence, in conjunction with Samedan's non-performance of its promises, to support the jury's finding of fraudulent intent. Whether or not this evidence is factually sufficient will be discussed below.

■ We next turn to Samedan's legal sufficiency contention that Intrastate disclaimed reliance on all representations and omissions. Samedan argues that reliance on any representations was disclaimed in paragraph 9 of the Settlement Agreement and cannot be proven as a matter of law. However, disclaimer is an affirmative defense that must be pleaded, or it is waived. *See Sherwin-Williams Company v. Perry Company*, 424 S.W.2d 940, 949 (Tex.Civ. App.—Austin 1968, writ ref'd n.r.e.). The record indicates that Samedan did not plead disclaimer as an affirmative defense, nor does the record indicate that disclaimer was tried by consent.[10] As a result, the issue of whether or not the disclaimer of reliance bars Intrastate from proving the element of reliance as a matter of law is not properly before this Court.

■ In its last legal sufficiency challenge to Intrastate's fraud claim, Samedan contends that the law of the case bars Intrastate from proving breach of contract as an essential element of its fraud claim inasmuch as it would be impossible for Intrastate to show injury had Samedan performed under the terms of the contract. However, it is not imperative that a party be able to recover on a breach of contract claim in order to recover on their claim for fraud by promise since the two claims are mutually exclusive. *See Formosa Plastics Corporation, U.S.A. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex.1998); *see also Kajima Int'l, Inc.*, 15 S.W.3d at 294.

■ In the first appeal, this Court affirmed the trial court's grant of a directed verdict in favor of Samedan based solely on waiver principles for failure to cite authority in support of its contentions in accordance with former Texas Rule of Appellate Procedure 74(f).[11] *See Intrastate Gas Gathering Co., Inc.*, No. 12–95–00225–CV, at 11, *citing Green v. Reyes*, 836 S.W.2d 203, 213 (Tex.App.—Houston [14th Dist.] 1992, no writ). This Court did not address the sufficiency of the evidence of Intrastate's breach of contract claim, nor did it specifically hold that there was no evidence to show that Samedan had breached the Settlement Agreement. Therefore, we conclude that this Court's affirmance of the trial court's directed verdict as to Intrastate's breach of contract claim in the first appeal, does not, by law of the case, prevent Intrastate from offering evidence tending to show that Samedan did not perform its promises under the Settlement Agreement as support for its fraud claim. Accordingly, we hold that the evidence in the record is legally sufficient to support a judgment on Intrastate's fraud claim either by false promise or concealment.

### d. *Factual Sufficiency Challenges to Fraud*

Samedan contends that the evidence does not support a reasonable inference that it entered into the Settlement Agreement with no intent to perform. There is rarely direct evidence to demonstrate fraudulent intent. *See Frost National Bank v. Heafner*, 12 S.W.3d 104, 112 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Juries are invariably required to draw inferences from circumstantial evi-

---

10. The issue of disclaimer first raised by Samedan in its Motion for Judgment Notwithstanding the Verdict. In its response, Intrastate objected to the fact that disclaimer had not been pleaded as an affirmative defense. Samedan has not raised the issue of trial by consent on appeal.

11. The subject matter of former Appellate Rule 74(f) germane to this discussion is now contained in Rule 38.1(h).

dence to reach a finding as to intent. *Id.* This can prove to be a daunting task. As such, even slight circumstantial evidence of fraud, when considered with the breach of promise to perform is sufficient to support a finding of fraudulent intent. *Id.*

■■■■ As Samedan points out, if a jury is to infer a fact, it must be able to deduce that fact as a logical consequence from other proven facts. *Id.* It is not enough that the facts raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. *Id.* When circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. *Id.* However, we remain mindful that the jury is the finder of fact, and we may not reverse simply because we disagree with the conclusion it reached. *See In re King's Estate,* 244 S.W.2d at 661. We will only reverse if the jury's finding is against the great weight and preponderance of the evidence. *Id.*

■■■ We earlier concluded that there is some evidence that Samedan had the requisite fraudulent intent. However, Samedan contends that, given the fact that the record contains evidence that would tend to support alternate explanations for its conduct, the inferences drawn from that evidence tend to support an equally plausible, if not the opposite, conclusion than was reached by the jury. We disagree. When reviewing the evidence tending to support intent, it is important to remember that along with Samedan's ownership and operation of the 42–mile gas pipeline

in accordance with the terms of the Settlement Agreement, there was evidence of almost certain utility classification. Indeed, Intrastate had been classified as a utility when it operated the pipeline and transported third-party gas. Intrastate's expert testified that, given a scenario in which the owner and operator of a 42–mile gas pipeline, which crosses public highways, was using the pipeline to transport third-party gas, the chances that the operator would not be designated as a utility by the State were "slim." [12] The record reflects that the pipeline at issue crossed several public roads. Further, the terms of the settlement agreement involved the transport of third-party gas. This almost certain utility status coupled with its failure to file necessary documentation with the State and its post-Settlement Agreement insistence on cancellation of the gas processing agreement were it ever to be classified as a utility, is sufficient evidence to support the jury's conclusion that Samedan never intended to comply with the terms of the settlement agreement. Moreover, as set forth above, the fact that Samedan's filed its T–4 application so soon after its disconnection of the pipeline from the processing plant and the third-party wells, considered in conjunction with the limited scope of use and activity Samedan was then able to disclose in its T–4 application, could logically have been construed by the jury as even more evidence of a disingenuous motive on Samedan's behalf. The remainder of the record does not contain evidence that would tend to greatly outweigh the evidence supporting the

---

**12.** A person or entity is classified as a utility if it engages in the business of "owning or operating or managing a pipe line for the transportation or carriage of natural gas, whether for public hire or not, if any part of the right of way for said line has been acquired, or is [later acquired] by the exercise of the right of eminent domain." *See* Act of May 28, 1981, 67th Leg., R.S., ch. 626, § 3, 1981 Tex. Gen. Laws 2442, 2443–44, *amended by* Act of May 10, 1983, 68th Leg., R.S., ch. 263, § 29, 1983 Tex. Gen. Laws 1161, 1230, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 9, 1997 Tex. Gen. Laws 713, 1018; *now codified at* Tex. Util.Code Ann. §§ 121.001(a)(2) (Vernon Supp.2000).

jury's finding on the issue of intent, nor does the jury's finding, given all evidence of record, shock the conscience of this Court. We therefore hold that the evidence supports the jury's finding that Samedan entered into the contract with no intent to perform.

■ Finally, Samedan contends that the evidence is factually insufficient to support a fraudulent promise. As set forth above, the evidence is factually sufficient to support the jury's finding of fraudulent intent on Samedan's behalf. Thus, our review will center upon whether there exists factually sufficient evidence of a representation by Samedan in the form of a promise. To find evidence of these affirmative representations, we need not look further than the Settlement Agreement itself. In the Settlement Agreement, Samedan represented that, in exchange for the Pipeline, it would (1) deliver "its gas" to the Plant for three years, (2) deliver it in pipeline quality, (3) bring its shut-in gas wells on-line as "a reasonable and prudent operator," and (4) provide pipeline capacity so that Intrastate would be able to perform its third-party contracts. Each of these written statements constitutes an affirmative representation in the form of a promise. That Samedan did not fulfill its obligations pursuant to the Settlement Agreement is not contradicted by any great weight of evidence. Moreover, our review of the record does not indicate that the overwhelming weight of the evidence contradicts the evidence supporting the fact that Intrastate relied on these representations by Samedan to its detriment. Therefore, we hold that the evidence is factually sufficient to support the jury's finding of fraud by false promise. Samedan's first issue is overruled.

### TORTIOUS INTERFERENCE

Samedan's challenge as to the jury's tortious interference finding is twofold. First, Samedan contends that the question in the jury charge on tortious interference is defective. Second, Samedan challenges the legal and factual sufficiency of the finding itself, as well as the implicit finding that Samedan's conduct was not justified.

### Charge Error–Misidentification versus Materiality

■ Complaints concerning the trial court's charge are viewed in light of the record as a whole. See Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n., 710 S.W.2d 551, 555 (Tex.1986). Submission of questions to the jury is a matter within the discretion of the trial court. See Galveston County Fair & Rodeo, Inc. v. Glover, 880 S.W.2d 112, 116 (Tex.App.—Texarkana 1994, writ denied). Thus, our standard of review is abuse of discretion. See Texas Dep't. Of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). That discretion is limited, however, to asking questions that control the disposition of the case, that are raised by the pleadings and the evidence, and that properly submit the disputed issues. See Texas Employers Ins. Ass'n v. Alcantara, 764 S.W.2d 865, 867 (Tex.App.—Texarkana 1989, no writ).

■ Samedan first contends that Question 5 of the jury charge, which inquired as to Samedan's liability for tortious interference with contract ("Question 5"), was immaterial since it asked only about interference with a "gas-transportation contract." Samedan points out that the only gas transportation agreement was between Samedan and Intrastate, with which there could not be any interference as a matter of law. According to Intrastate, the phrase "gas-transportation contract" was a mistake and should have read "gas-processing contract," referring to Intrastate's contracts with the owners of the third-party wells.

Although the literal wording of Question 5 queries whether Samedan interfered with a gas transportation contract, and fortuitously, the only gas transportation contract pertinent to the facts of the case was one to which Samedan was a party, we should not consider Question 5 in a vacuum. In *Bradford v. Vento,* a damages question was prefaced on an improper liability question. 997 S.W.2d 713, 730 (Tex. App.—Corpus Christi 1999), *rev'd. on other grounds,* 48 S.W.3d 749 (2001). Rather than limiting its analysis to the literal wording of the question, the Court considered the question in light of the charge as a whole. *Id.* Determining that the misidentification of the liability question was susceptible to lay, common sense correction, the Court held that the damages question was properly incorporated into the court's judgment as damages for the appropriate liability question, even though another liability question was actually referenced in the damages question. *Id.* In the instant case, considering the entire charge in light of the record, viewing Question 5 in light of all relevant circumstances, and applying common sense, it is clear that the misidentification of the contract with which Samedan allegedly interfered was not a source of confusion for the jury. Considering the charge as a whole, the damages question for tortious interference refers to Intrastate's *third-party contracts,* which, of course, did not involve Samedan. Moreover, during jury argument, Samedan's attorney argued to the jury at length regarding Intrastate's third-party gas processing contracts. The basis for the supposed error lies in the wording of the question, not in the propriety of Intrastate's theory of recovery. Such error could have easily been corrected by an objection on Samedan's part to the wording of the jury charge. Thus, since the misidentification of gas *transportation* contracts was easily susceptible to lay, common sense correction by the jury, we hold that Question 5 was not immaterial.

■■■ Prior to submitting the charge to the jury, the trial court must give the parties a reasonable time in which to examine and present objections to the charge. Tex.R. Civ. P. 272. Objections to the charge shall be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel before the charge is read to the jury. *Id.* All objections not so presented shall be considered as waived. *Id.* The test for determining if a party has preserved error in the jury charge is whether the party made the trial court aware of the complaint timely and plainly, and obtained a ruling. *See State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992).

■■■ In the case at hand, Samedan filed written objections to the questions submitted by Intrastate. However, Samedan's objections were not specific enough to direct the trial court that the problem with the question was that it inquired about gas *transportation* contracts, rather than gas *processing* contracts. Rather, as is quite apparent from its objections, Samedan was proceeding as if the question referred to the gas *processing* agreements, making objections such as "any such interference occurred, if at all, while *those contracts* were in the hands of Excel, not Intrastate." Moreover, Samedan's objection that "each contract should be identified," is inadequate because it did not direct the trial court to the specific problem with the question, namely, that it asked about gas *transportation,* not gas *processing,* contracts. We conclude that Samedan failed to preserve error, if any, in this respect.

Samedan next challenges the submission of Question 5, contending that the question failed to segregate and identify the con-

tracts with which Samedan allegedly interfered. The focus of Samedan's complaint was that it is possible the jury may have found that Samedan interfered with one contract, but not the others.

A trial court must submit in its charge to the jury all questions, instructions, and definitions raised by the pleadings and evidence. *See Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995). When feasible, jury questions should be in broad form, accompanied by appropriate instructions and definitions. *See Hyundai Motor Company v. Rodriguez*, 995 S.W.2d 661, 663–64 (Tex.1999). A single question may relate to multiple legal theories. *Id.* at 664. Moreover, where a question concerns the almost simultaneous effect of a single act on multiple participants, a single broad form inquiry is permissible. *See City of Amarillo v. Langley*, 651 S.W.2d 906, 915 (Tex.App.— Amarillo 1983, no writ).

In the case at hand, it is undisputed that third-party gas wells were connected to the pipeline. When Samedan disconnected the processing plant from the pipeline, this act automatically and simultaneously interfered with every one of Intrastate's contracts with third parties. These third-party contracts could not continue absent being connected to the processing plant via the pipeline. Samedan's act simultaneously interfered with all three contracts at issue. Submitting multiple questions corresponding with each contract at issue in such an "all or nothing" situation would run the risk of confusing the jury or could cause them to answer questions inconsistently. *See Hyundai*, 995 S.W.2d at 664. Therefore, we conclude that the trial court did not abuse its discretion in refusing to submit separate questions for each contract with which Samedan allegedly interfered.

Finally, Samedan challenges Question 5, asserting that the question improperly submitted Samedan's justification defense by way of instruction rather than as a separate question, and omitted language indicating that justification could be based on Samedan's colorable assertion of legal rights. However, Samedan's written objection to the trial court's charge merely stated that Samedan was entitled to a separate submission on its justification defense. Samedan's objection did not alert the trial court that it objected to the absence of language related to colorable assertion of legal rights in the instruction to Intrastate's proposed jury question. In order to preserve error in a jury charge, the party must make the trial court aware of the complaint timely and plainly. *See Payne*, 838 S.W.2d at 241. In objecting to the court's charge, a litigant must inform the court why the charge, as submitted, is defective, or of the significance of the questions, instructions or definitions tendered. *See Borden, Inc. v. Rios*, 850 S.W.2d 821, 828 (Tex.App.—Corpus Christi 1993), *vacated and set aside by agm't without reference to merits*, 859 S.W.2d 70 (Tex.1993). By not plainly indicating to the trial court its complaint as to the absence of language related to colorable assertion of legal rights in the instruction to Intrastate's proposed jury question, Samedan waived such an objection. *See* TEX.R. CIV. P. 272. Accordingly, considering the limited scope of Samedan's objection to the charge, our inquiry will focus on whether the trial court abused its discretion by refusing to submit Samedan's justification defense as a separate question.

Samedan directs this Court to two cases, *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 691 (Tex.1989) and *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex.1992), which it claims stand for the proposition that "[a] tortious interference defendant is entitled to a sep-

arate and legally correct submission of the defense of 'justification[,]' " and that "[t]he failure to do so is reversible error." These cases contain no such language, nor do they otherwise stand for such a proposition. Quite to the contrary, it has been held that a trial court's failure to submit a justification defense to a tortious interference action as a separate question is not an abuse of discretion. *See Edwards Transports, Inc. v. Circle S Transports, Inc.,* 856 S.W.2d 783, 788 (Tex.App.—Amarillo 1993, no writ).

■ Litigants are entitled to have controlling and disputed issues submitted to the jury. *See Triplex Comm., Inc.,* 900 S.W.2d at 718. By all accounts, the issue of justification was submitted to the jury, albeit not in the form Samedan would have preferred. The instruction on "Interference" in Question 5 read as follows:

> Interference is intentional *without justification* if committed with the desire to interfere with a contract or with the belief that interference is substantially certain to result *provided that such interference is not in the exercise of one's own equal or superior right or interest in the subject matter.* (emphasis added).

The trial court's method of submission as to the justification issue was appropriate. *See, e.g., Southwestern Bell Telephone,* 843 S.W.2d at 472 (holding that instruction on justification that "[i]nterference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possesses an equal or superior interest to that of the Plaintiff in the subject matter" was substantially correct). As Samedan points out, the Texas Pattern Jury Charge provides for a separate question on justification.[13] However, Samedan did not direct

the trial court, nor does it direct this Court, to any controlling authority mandating the separate submission of the defense of justification, nor is this Court aware of any such controlling authority. Moreover, Samedan did not inform the trial court as to why a separate question on justification was preferable to submitting justification as an instruction to the tortious interference question. Therefore, we hold that the trial court did not abuse its discretion in submitting the issue of justification as part of the instruction on the tortious interference question.

### Evidentiary Sufficiency

#### a. Legal Sufficiency

■ In its first legal sufficiency issue, Samedan contends that there could be no tortious interference as a matter of law because, under the gas purchase agreements, title to the gas passed to Intrastate at the wellhead, and there is no evidence that Samedan interfered with the passage of title. We disagree. The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) interference that proximately caused damage, and (4) actual damage or loss. *See Powell Industries, Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998). The tort of interference with contracts embraces all intentional invasions of contractual relations, including any act interfering with the performance of a contract, regardless of whether breach of contract is induced. *See Tippett v. Hart,* 497 S.W.2d 606, 611 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). It follows that where the intentional acts of a person serve to frustrate the purpose of another's contract

---

**13.** *See* STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES • BUSINESS • COMMERCE • INSURANCE • EMPLOYMENT PJC 106.3 (1998).

with a third party, thereby causing damage, such acts constitute the requisite interference. *See Hughes v. Houston Northwest Medical Center,* 680 S.W.2d 838, 842 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

In the instant case, the existence of third-party contracts is undisputed. As set forth in detail above, the record contains sufficient evidence to allow the jury to conclude that Samedan procured Intrastate's gas pipeline by fraud, and in so doing, deprived Intrastate of its ability to transport third-party gas without Samedan's providing the line capacity as set forth in the Settlement Agreement. Despite its contractual representations that it would provide line capacity to Intrastate to transport third-party gas, there is sufficient evidence that Samedan disconnected third-party wells from the pipeline, thereby frustrating the purpose of the contract as to Intrastate. Without the ability to move the gas it purchased from third-parties through the pipeline for processing, or to otherwise make the gas ready for sale, Intrastate's gas purchase contracts with third parties were rendered effectively useless. Therefore, we hold that the evidence is legally sufficient to support the jury's finding that Samedan intentionally interfered with Intrastate's contracts with third parties.

We next address the issue of legal sufficiency as it relates to Samedan's justification defense. Samedan contends there can be no interference as a matter of law because all of Samedan's conduct was in pursuit of its legal rights as owner of the pipeline, operator, gas seller and signatory to the Settlement Agreement, or at least in pursuit of a colorable assertion under that status. Samedan further contends that it was justified in refusing to transport third-party gas until a gas processing agreement was signed pursuant to the terms of the Settlement Agreement.

In testing a legal sufficiency contention related to Samedan's justification defense, we must first examine evidence supporting the jury's finding, excluding all evidence to the contrary. *See Sterner,* 767 S.W.2d at 690. If no supporting evidence is found, then we must look to the entire record to establish if the contrary proposition is established as a matter of law. *Id.*

■■■■ Under the defense of legal justification or excuse, one is privileged to interfere with another's contract (1) if it is done in a bona fide exercise of his own rights, or (2) if he has an equal or superior right in the subject matter to that of the other party. *Id.* at 691. Samedan claims that it was justified in disconnecting all third-party wells because Intrastate refused to negotiate a processing agreement and failed to make a $45,000 payment in accordance with the terms of the settlement agreement. As we have held, there was sufficient evidence for the jury to conclude that the Settlement Agreement, on which Samedan bases its claims of justification, was procured by Samedan's fraud. As a matter of law, fraudulent conduct is not a legal right, but rather the breach of a legal duty. *See Chien v. Chen,* 759 S.W.2d 484, 494 (Tex.App.—Austin 1988, no writ) (at common law, the word "fraud" refers to an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed). Moreover, because the evidence is sufficient to support the jury's finding on the element of knowledge of falsity, Samedan could not, as a matter of law, have reasonably believed it was exercising equal or superior legal rights to the rights of Intrastate. *See Sears, Roebuck & Company,* 877 S.W.2d at 282 (knowledge of falsity is an element of common law fraud). Further still, the materi-

al terms of the processing agreement were set forth in paragraph 4(e) of the Settlement Agreement. Since paragraph 4(e) was a contract to enter into a future contract, Samedan was precluded from further negotiations as to any material terms as a matter of law. *See Parker Chiropractic*, 500 S.W.2d at 201. Therefore, concluding that the evidence supports the jury's finding that Samedan's conduct was not justified, we need not address the second prong of the review under *Sterner*. *See Edwards Transports, Inc.*, 856 S.W.2d at 788. Accordingly, we hold that there is legally sufficient evidence to support the jury's finding that Samedan's conduct was not justified.

### b. *Factual Sufficiency*

 Samedan broadly contends that the evidence is factually insufficient to support the jury's finding that Samedan interfered with Intrastate's third-party contracts. We have already held there to be some evidence to support the jury's finding on tortious interference. The existence of third-party contracts is undisputed. The record contains sufficient evidence to allow the jury to conclude that Samedan procured Intrastate's gas pipeline by fraud and in so doing, deprived Intrastate of its ability to transport the gas it purchased without first obtaining line capacity from Samedan as was set forth in the Settlement Agreement. There is also sufficient evidence to support the jury's finding that Samedan intentionally deprived Intrastate of the ability to transport third-party gas through the pipeline by disconnecting third-party wells from the pipeline without justification. It follows that Samedan's conduct frustrated the purpose of the Settlement Agreement as to Intrastate. Without the ability to move the gas it purchased from third-parties through the pipeline for processing, or to otherwise make the gas ready for sale, an intention

made clear by the language of the Settlement Agreement, Intrastate's gas purchase contracts with third parties became, in effect, useless. Our review of the record does not reveal any significant contradictory evidence such that would lead this Court to conclude that the jury's finding on tortious interference is against the great weight and preponderance of the evidence. *See In re King's Estate*, 244 S.W.2d at 661. Therefore, we hold the evidence to be factually sufficient to support the jury's finding on tortious interference. Samedan's second issue is overruled.

### DAMAGES

#### *Out–of–Pocket Damages*

Samedan contends that there is no evidence to support the jury's award of out-of-pocket damages because the award was based on replacement cost. Samedan contends replacement cost is an inappropriate measure of the value of the gas pipeline at issue. We first review whether Samedan properly preserved error on this issue.

 There are five ways to preserve error for no evidence challenges: (1) a motion for instructed verdict, (2) an objection to the submission of a jury question, (3) a motion for judgment notwithstanding the verdict, (4) a motion to disregard the jury's answer to a vital fact question, or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). To preserve error, the motion must be sufficient to call the trial court's attention to the matter at issue. *See* TEX.R.APP. P. 33.1(a); *see also Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999). Additionally, the point of error must correspond to the motion made at trial. *In the Matter of T.R.S.*, 931 S.W.2d 756, 758 (Tex.App.—Waco 1996, no writ). In other words, a

motion which states one legal theory cannot be used to support a different legal theory on appeal. *Id.* Samedan's motion for new trial does not raise the issue that there is no evidence to support the jury's out-of-pocket damages award. In its written objections to the charge, Samedan complains that there is no instruction as to how damages should be determined. Samedan's objection was not specific enough to call the trial court's attention to the matter it seeks to raise on appeal and Samedan did not submit a proposed question on out-of-pocket damages or an instruction as to the appropriate method to be used in calculating out-of-pocket damages that might have served to clarify the issue.

▆▆▆ Samedan asserts broadly in a footnote to its motion for judgment notwithstanding the verdict ("JNOV Motion") that "because the Court excluded all evidence relating to Intrastate's out-of-pocket damages model, there is no evidence to support this finding." However, the argument section of Samedan's JNOV Motion focuses on lost profits and the benefit of the bargain measure of damages. In its response to Samedan's JNOV Motion, Intrastate argued that its valuation of the pipeline is based on "pure replacement cost." Subsequently, Samedan filed its First Supplemental JNOV Motion [14], in which it revisits the issue of out-of-pocket damages. However, even in light of Intrastate's statement that the value of the pipeline is based on "pure replacement cost," Samedan failed to raise the issue to the trial court that it now seeks to raise on appeal, namely, whether the pipeline's market value, rather than its replacement cost, is the appropriate measure to determine out-of-pocket damages. We conclude

that the arguments raised by Samedan in its JNOV Motion and Supplemental JNOV Motion were not specific enough to give the trial court proper notice of the matter at issue, thereby enabling the trial court to consider and correct the error, if any. Therefore, by not first raising the issue specifically to the trial court, Samedan has failed to preserve error.

▆▆▆ Next, Samedan challenges the factual sufficiency of the jury's award of out-of-pocket damages. Complaints on appeal of factual insufficiency must first be raised in a motion for new trial. *See* TEX.R. CIV. P. 324(b)(2). In order to preserve a factual sufficiency point for review, the motion for new trial must specifically point out the deficiencies in a manner that adequately apprises the trial judge of those deficiencies in such a way that the objection can be clearly identified and understood. *See Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.,* 927 S.W.2d 146, 151–52 (Tex.App.—Corpus Christi 1996, no writ). In its motion for new trial, Samedan argued:

> This Court properly excluded all of Intrastate's evidence on the out-of-pocket measure of damages. Thus, Intrastate's damages expert was not allowed to opine about this measure of damages. In light of this exclusion of all evidence on the out-of-pocket measure of damages, the evidence is factually insufficient to support the jury's answer of $2.5 million.
>
> Assuming that the jury found that Intrastate received no value under the Settlement Agreement, there is factually insufficient evidence to support the finding that the gathering system transferred to Samedan was valued at $2.5 million.

---

14. Samedan's Supplemental JNOV Motion incorporated Samedan's Motion to Modify Judgment by reference. To the extent practical, we consider the Motion to Modify as part of Samedan's Supplemental JNOV Motion.

There is factually insufficient evidence to support the finding of out-of-pocket damages of $2.5 million because this figure indicates that: (1) the jury accepted, based on insufficient evidence, Intrastate's conclusory statement that the gathering system was valued at $2.5 million, and (2) the jury ignored the evidence of consideration received by Intrastate under the Settlement Agreement, despite Intrastate's express acknowledgment of that consideration. The substance of Samedan's argument on appeal is that market value, not replacement cost, is the correct measure of the pipeline's value for the purpose of calculating out-of-pocket damages. Neither the term "market value" nor "replacement cost" appears in Samedan's motion for new trial, nor can the nature of Samedan's complaint be reasonably inferred from its objection. Thus, we conclude that Samedan's objections in its motion for new trial failed to apprise the trial judge of the deficiencies now argued on appeal in such a way that its objections could be clearly identified and understood. *See T.R.S.*, 931 S.W.2d at 758. Therefore, we will not consider such argument on appeal.

▆▆ Finally, Samedan complains that the evidence is factually insufficient to support the jury's award on out-of-pocket damages because the jury could not, in applying the formula for out-of-pocket damages, have attributed a "zero" value to the amount received by Intrastate under the Settlement Agreement. The formula in question reads as follows:

> What do you find to be the difference, if any, between the consideration transferred to Samedan pursuant to the Intrastate/Samedan Settlement and the value received by Intrastate.

The jury's answer, in dollars and cents, was $2.5 million. Based on our reading of the formula, we do not believe, as Same-

dan contends, that the jury's answer clearly indicates that the jury attributed a "zero" value to the amount received by Intrastate under the Settlement Agreement. As Intrastate points out in its brief, the record reflects that pursuant to the Settlement Agreement, Intrastate transferred the Pipeline, executed a release, canceled a Gas Processing Agreement and paid $100,000 to Samedan. In exchange, Samedan executed a release and made a number of contractual promises. It is not the role of this Court to delve into the jury's mental processes. *See Allen v. Riedel*, 425 S.W.2d 665, 677 (Tex.Civ.App.— Eastland 1968, no writ). However, we recognize the possibility that the jury may have concluded that the value of the mutual releases offset one another, or that the $100,000 payment by Intrastate offset Samedan's release. Nonetheless, our review is limited to the record on appeal, and based on our review, we cannot conclude that the great weight of the evidence demonstrates that the jury found the value received by Intrastate to be "zero." Therefore, we conclude the award of $2.5 million is not against the great weight and preponderance of the evidence.

### Interference Damages

#### a. *Evidentiary Sufficiency*

Samedan argues that the evidence is legally and factually insufficient to support the jury's award of damages for tortious interference. The basis of Samedan's contention is that (1) Intrastate's expert failed to provide one complete calculation showing damages for interference with third-party contracts, and (2) the entire award rests upon defective assumptions about the duration of third-party contracts, the wells' productivity, and the capacity and amount of time the processing plant could operate, all of which render the award too speculative. We first look to the record to deter-

mine if Samedan properly preserved the error of which it now complains.

■ To preserve its legal sufficiency complaint, Samedan was required to have specifically raised its complaint in a manner sufficient to call the trial court's attention to the matter at issue by way of its objection to the submission of a jury question, its motion for judgment notwithstanding the verdict, or its motion for new trial. *See Cecil,* 804 S.W.2d at 510–11; TEX. R.APP. P. 33.1(a); *McKenzie,* 997 S.W.2d at 280. Samedan's objection to Question 6(c) of the court's charge ("Question 6(c)"), which inquired about interference damages stated that the question failed to confine the jury to reasonable compensation or present value. Samedan's motion for new trial did not raise any legal sufficiency arguments as to Question 6(c).

■ Turning to Samedan's JNOV Motion and Supplement thereto, it is clear that Samedan is making a very different argument on appeal. While Samedan argued that the evidence is legally insufficient to support the jury's tortious interference award, its bases for this conclusion were wholly different. In its JNOV Motion and Supplemental JNOV Motion, Samedan contended that there was legally insufficient evidence to support the tortious interference damages because (1) the question was submitted to the jury without any instruction as to the appropriate measure of damages, (2) there was no way to determine whether the jury limited the damages to "fair and reasonable compensation," (3) the jury's award of lost profits to Intrastate is inconsistent with its finding in Question 6(b), which inquired as to benefit-of-the-bargain damages, (4) the question was defective because it failed to provide separate damages for each of the three third-party contracts, (5) the award of tortious interference damages amounts to a double recovery, and (6) the fact that

the damages are identical for both tortious interference and fraud damages confirms Samedan's legal insufficiency challenge. Samedan's complaints to the trial court in its JNOV Motion are wholly inconsistent with its argument on appeal. On appeal, Samedan's argument focuses on the alleged inadequate support for lost profits based on its contention that (1) Intrastate never calculated any damages deriving from third-party wells, but rather calculated total lost gas processing revenues, (2) that Intrastate did not offer evidence that the third-party contracts would extend through 2003, (3) that Intrastate failed to prove that the third-party wells would produce the amount of gas claimed, and (4) that Intrastate's damage model assumes unrealistic plant productivity. Samedan literally abandoned the arguments raised in its JNOV Motion and substituted its present contentions. Thus, we conclude that the arguments raised by Samedan in its JNOV Motion and Supplemental JNOV Motion were not specific enough to give the trial court proper notice of the argument presented on appeal, thereby enabling the trial court to consider and correct the error, if any. *See T.R.S.,* 931 S.W.2d at 758.

Turning to Samedan's factual insufficiency argument, we review Samedan's motion for new trial to see if Samedan properly preserved error. In its motion for new trial, Samedan made identical arguments in support of its factual insufficiency contention as it made in its JNOV Motion as support for its legal sufficiency contention. For the same reasons set forth above, we conclude that the arguments raised by Samedan in its motion for new trial were not specific enough to give the trial court proper notice of the matter at issue, thereby enabling the trial court to consider and correct the error, if any. *See T.R.S.,* 931 S.W.2d at 758. Therefore,

Samedan failed to preserve error as to its contention that the evidence is factually and legally insufficient to support the jury's award of tortious interference damages.

### b. *Charge Error*

 Samedan contends that Question 6(c) is fatally defective because it did not contain an instruction to the jury on the proper measure of damages. We agree. When a charge fails to instruct the jury on the proper measure of direct damages, the submission is reversible error. *See Arthur Andersen & Co. v. Perry Equipment Corporation*, 945 S.W.2d 812, 817 (Tex.1997). When a defective damages question is submitted, the proper remedy is to remand for new trial. *See Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973). The question at issue read as follows:

What do you find to be the damages, if any, proximately caused by the interference of Samedan, if any you have found, with Intrastate's third-party contracts.

The charge contained no instruction whatsoever as to the proper measure of damages for tortious interference.

 Intrastate argues that Samedan did not properly preserve error on this point because its written objections, which were made to Intrastate's proposed jury charge, were improperly incorporated by reference with respect to the actual charge submitted by the trial court. We disagree. Texas Rule of Civil Procedure 274 provides that "[n]o objection to one part of the charge may be adopted and applied to any other part of the charge by reference only." Tex.R. Civ. P. 274. Samedan submitted written objections to virtually every section of Intrastate's proposed jury charge. At trial, when the court's charge was submitted to counsel, Samedan's attorney made the following statement on the record:

First, the Defendants have previously filed written objections to the Plaintiffs' proposed jury questions, definitions, and jury's instructions, to the extent the Court has included the Plaintiffs' proposals in the Charge, that the [Defendants] re-urge at this time the written objections to each of the applicable questions, definitions, and instructions.

Question 6(c) was identical to Intrastate's proposed submission to which Samedan filed written objections [15] and requested an alternative question, which contained a measurement of damages. Rule 274 does not speak to this specific situation, but rather, concerns a situation in which a party incorporates by reference its objection to one charge question in its objection to another. In any event, we do not read Rule 274 to require a party who has previously filed specific written objections to a proposed charge question, to be required to regurgitate those same objections word for word when the proposed charge question is incorporated into the final version of the charge unchanged or substantially unchanged. To require such would prove to be nothing more than an exercise in redundancy. In such situations, it is sufficient to direct the trial court to timely written objections previously filed with the court. *See Payne*, 838 S.W.2d at 241. Samedan's written objections were adequate to make the trial court aware of its complaint that Question 6(c) was defective for failing to instruct the jury on the measure of damages for tortious interference.

---

**15.** Samedan's written objection stated, "Defendants object to Intrastate's requested question on tortious interference damages because it purports to submit damages in the abstract, with no instruction as to the proper elements to consider. The jury must be instructed as to the appropriate measure or elements of damages to consider."

Intrastate next argues that Samedan failed to preserve error because it submitted its requests to the trial court *en masse;* and therefore, Samedan's requests were properly overruled. We disagree. Texas Rule of Civil Procedure 273 does not prohibit including a request in a complete charge as long as it is not obscured. *See Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450, 451 (Tex.1995). In the case at hand, Samedan's request appeared in its proposed Question No. 9. The request properly submitted the issue on interference damages and instructed the jury as to the appropriate measure of damages that measurement of damages being "loss of the benefit of the bargain." *See American National Petroleum Company v. Transcontinental Gas Pipe Line Corporation,* 798 S.W.2d 274, 278 (Tex.1990) (the basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed); *see also Peco Construction Co. v. Guajardo,* 919 S.W.2d 736, 739 (Tex. App.—San Antonio 1996, no writ) (lost benefit of the bargain is an appropriate measure of contract damages). Therefore, we conclude that Samedan properly requested the instruction on the measure of damages in accordance with Texas Rule of Civil Procedure 273 and that the trial court, by refusing Samedan's request, abused its discretion. Samedan's contention that the omission of this instruction from Question 6(c) of the charge constituted reversible error is sustained.

We next address Samedan's contention that it was entitled to a damages question that instructed the jury to reduce the award to present value by limiting the jury to those damages that "if paid now in cash would fairly and reasonably compensate" the plaintiff. Samedan contends that this omission rendered Question 6(c) fatally defective. It has been held that failure to instruct that damages awarded should be reduced to present value is reversible error. *See American Nat. Ins. Co. v. Nicholson,* 119 S.W.2d 128, 130 (Tex.Civ.App.—Dallas 1938, no writ). Thus, the trial court's failure to incorporate the words "if paid now in cash would fairly and reasonably compensate" or similar language to instruct the jury to award "present value" constituted reversible error. In cases where the award was not reduced to present value, remittitur is an appropriate remedy. *See, e.g., Kansas City Southern Railway Company v. Lawson,* 435 S.W.2d 582, 587 (Tex.Civ.App.— Beaumont 1968, no writ). However, since the issue of tortious interference damages will be remanded for a new trial, we need not address the issue of remittitur. Samedan's third issue is sustained in part, and overruled in part.

### THE JURY CHARGE IN LIGHT OF CROWN LIFE INSURANCE COMPANY V. CASTEEL

Samedan's fourth issue involves the recent Supreme Court holding in *Crown Life Insurance Company v. Casteel,* 22 S.W.3d 378 (Tex.2000). In *Casteel,* the Supreme Court was faced with the issue of whether the submission of a single broad-form question in a jury charge, which was based on multiple theories of liability, some of which were defective, constituted harmful error. In concluding that the submission was harmful error, the Court stated as follows:

> It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the

appellate court is often unable to determine the effect of this error. The best the court can do is determine that some evidence *could* have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant *should* be held liable on proper, legal grounds (citations omitted). Accordingly, we hold that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory. *See* TEX.R.APP. P. 61.1 ("No judgment may be reversed on appeal ... unless the Supreme Court concludes that the error complained of ... probably prevented the petitioner from properly presenting the case to the appellate courts."); *see also* TEX.R.APP. P. 44.1(a).

It is essential that the theories submitted be authorized and supported by the law governing the case. If they are not, the appellate court must, at a minimum, be able to determine whether properly submitted theories constituted the basis of the jury's verdict.

. . .

However, when questions are submitted in a manner that allows the appellate court to determine that the jury's verdict was actually based on a valid liability theory, the error may be harmless. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 752 (Tex.1995) ("Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question ·immaterial."); *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743,

749–50 (Tex.1980) (holding that the potentially improper submission of defensive issues was harmless error when the jury also found for the defendant on independent grounds).

*See Casteel,* 22 S.W.3d at 388–89.

Intrastate contends that *Casteel* is limited to its facts, and voices its concern that a broad interpretation of *Casteel* beyond its facts would prohibit broad-form submission. The Supreme Court addressed this issue stating that:

> Casteel argues that Texas Rule of Civil Procedure 277 required the trial court to submit all liability theories in a single broad-form question, and that the verdict should not be overturned because the trial court simply followed that rule. *See* TEX.R. CIV. P. 277. Rule 277 states, "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions."

. . .

> Rule 277 is not absolute; rather, it mandates broad-form submission "whenever feasible." *See Westgate Ltd. v. State,* 843 S.W.2d 448, 455 n. 6 (Tex.1992). In *Westgate,* we noted that "[s]ubmitting alternative liability standards when the governing law is unsettled might very well be a situation where broad-form submission is not feasible." *Id.* Similarly, when the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best serves the policy of judicial economy underlying Rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined. Furthermore, Rule 277 mandates that "[t]he court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. It is implicit in this mandate that the jury be able to base its verdict on legally valid questions and

instructions. Thus, it may not be feasible to submit a single broad-form liability question that incorporates wholly separate theories of liability.

*See Casteel*, 22 S.W.3d at 389–90. Thus, despite Intrastate's contentions, *Casteel* did not do away with broad-form submission. Rather, it serves to define the parameters of *feasibility*, which has always been the boundary of broad form submission.

#### a. *Liability*

■ In the case at hand, Samedan contends that legal, evidentiary and procedural defects in the multi-subpart liability questions require reversal because it is impossible to determine if the jury found liability on a valid, non-defective, supportable liability theory. We disagree. We have held that there is sufficient evidence to support the jury's findings on Intrastate's liability claims for fraud and tortious interference.[16] In so holding, we examined Intrastate's underlying theories of liability and concluded that they were valid. Accordingly, there was no harmful error in the trial court's submission of multi-theory liability questions since none of the underlying liability theories upon which the judgment was based were invalid. *See Casteel*, 22 S.W.3d at 388.

#### b. *Damages*

Samedan next contends that reversal is required because it is impossible to determine if the actual damage awards are based on valid, non-defective, supportable liability theories. As set forth above, since we have concluded that Intrastate's underlying theories of liability of fraud and tortious interference are valid, non-defective

and supported by sufficient evidence, it follows that the actual damages awards are properly supported as to those liability theories.

■ However, Samedan contends that even though it was not elected as a basis for the judgment, Intrastate's DTPA theory is relevant to the issue of damages because the submission of the damages question was predicated on multiple liability questions, including the DTPA questions. Samedan further contends that the DTPA questions are based on multiple, invalid liability theories.

Intrastate contends that Samedan failed to preserve error on this issue. We agree. In *Casteel*, the Supreme Court held that, "Crown preserved error by obtaining a ruling on its timely objection to the question on the ground that Casteel did not have standing to pursue any DTPA-based Article 21.21 claims because he was not a consumer." *Id.* at 387–88. However, in *Casteel*, the Court was not considering the propriety of a broad-form damages question and thus, did not address the issue of preservation of error with regard to a damages question. Samedan directs our attention to *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Manufacturing, Inc.*, 42 S.W.3d 149 (Tex.App.—Amarillo, 2000), which it claims supports its contention that *Casteel* may be invoked with regard to damages by way of a standard complaint that "no evidence" supports a cause of action or an element of damages. In *Iron Mountain*, the Amarillo Court of Appeals considered the issue of whether to apply *Casteel* when a broad form submission on damages contained a mixture of damages measures in one question with a

---

**16.** Intrastate elected to recover its judgment based on fraud, rather than under the DTPA. Thus, we need not consider Samedan's arguments that the underlying theories to Intrastate's DTPA claim are defective because Intrastate is not relying on the DTPA. Intrastate's DTPA claim is discussed below as that claim relates to the issue of *Casteel* and damages questions.

space for only one answer. *Id.* at 155–56. The Court held that an objection that "the question submitted an improper measure of damages for the contract theory and that there was no proof of lost profits" was sufficient to comply with Rule 274 and preserve error. *Id.* at 156–57. The issues raised in *Iron Mountain* and the present case are dissimilar. Question 6 does not involve multiple intermingled damage measures, but rather permitted the jury to find separately on each measure of damages. In our view, *Iron Mountain* does not specifically address the issue of preservation of error in a damages question by objection to alleged defective underlying liability theories.

Neither the holdings in *Casteel* nor *Iron Mountain* altered the practice of preserving supposed charge error. As we have stated above, the test for determining if a party has preserved error in the jury charge is whether the party made the trial court aware of the complaint timely and plainly, and obtained a ruling. *See Payne,* 838 S.W.2d at 241. In *Casteel,* Crown Life's complaint was that the liability question was based on a defective theory, namely, that the plaintiff lacked consumer standing to sue under the DTPA. *See Casteel,* 22 S.W.3d at 387–88. Therefore, by objecting to the underlying theory of liability, Crown Life preserved error as to that *liability* question. In *Iron Mountain,* the Court of Appeals held that Iron Mountain preserved error with regard to the damages question by objecting that there was no evidence to support one of the underlying measures of damages and that another measure of damages was improper. Thus, to the extent that Samedan contends that its objections to the underlying theories of liability under the DTPA preserved its complaint that the damages question was defective because it was potentially based on a defective liability theory, we disagree.

*Casteel* and *Iron Mountain* are, in essence, based on the theory that a question is defective if one of its components is flawed. When the question involves a liability issue, the component is the underlying theory of liability. When the question involves the issue of damages, the component is, logically, the measurement used to calculate the damages. At argument, Samedan's counsel simplified this theory by analogizing, "One bad apple spoils the bunch." Applying this same analogy, we do not conclude that Samedan's objection to a bad apple in one bunch (liability question) necessarily encompasses an objection that a separate bunch (damage question) will be spoiled. Samedan's objection was simply not sufficient to make the trial court aware of its specific complaint that it now tries to raise on appeal. *See Payne,* 838 S.W.2d at 241. Moreover, Samedan's argument amounts to an improper attempt to adopt its charge objection as to underlying DTPA liability theories and incorporate it by reference as its objection to the damage question. *See* TEX.R. CIV.P. 274.

Samedan also directs us to its written objection to the damages question, which reads as follows:

> Defendants object to Intrastate's requested damages question because it is not tied to *any* findings on liability. Questions on each cause of action should be clustered together, and each such cluster should be complete in itself (citation omitted). Damages questions must be tied to the proper liability question (citation omitted). Intrastate's requested damages question purports to ask about general damages in the abstract, with no tie or predicate on *any* liability, and is therefore improper and should be refused. (emphasis added).

Contrary to Samedan's written charge objection, the damages question was tied to liability findings. On the page of the

charge preceding the damages question, it is specifically stated, "If you have answered 'Yes' as to any of questions Nos. 1, 2, 3, 4, or 5, then proceed to Question 6; otherwise skip Questions Nos. 6 through 11 and proceed to Question No. 12." This page was not included in the charge at the time Samedan filed its written objections, but was included in the final version of the charge. The initial omission of the predicate to the damages question confirms that Samedan's objection to the damages question was that it was not predicated on *any* theory of liability. Ultimately, the problem of which Samedan complained was remedied as the damages question was tied to liability findings. However, the argument Samedan now attempts to raise on appeal was not sufficiently presented to the trial court. Therefore, we conclude that Samedan failed to preserve its complaint that it is impossible to determine if the jury found liability on a valid, non-defective, supportable liability theory.

### c. *Punitive Damages*

Samedan's final contention is twofold. Samedan first argues that reversal is required because it is impossible to determine if the punitive damages award is based on a valid, non-defective, supportable fraud theory. However, since we have concluded that all of Intrastate's underlying fraud theories are valid, non-defective and supported by sufficient evidence, it follows that the punitive damages award is properly supported in that respect.

■ Samedan next argues that reversal is required because the charge did not require the jury to find actual fraud damages as a predicate for fraud punitive damages. Intrastate responds that Samedan

failed to preserve error on this issue. The only objection that Samedan made to Intrastate's proposed jury charge [17] related to punitive damages read as follows:

> Defendants object to the submission of any predicate question or damages question on the issue of exemplary or additional damages, because there is no basis for such an award. A finding of actual damages is a necessary predicate to an award of exemplary damages. *Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex.1995). Intrastate's proposed submission does not ask the jury to find actual damages for any alleged fraud, and therefore the necessary predicate for exemplary damages is missing. Thus, any questions on exemplary damages are unnecessary surplusage, and should be refused (citation omitted).

On appeal, Samedan contends that the question on punitive damages is defective because it is predicated on a malice finding, which is, in turn, predicated on a fraud finding, thereby permitting the jury to move from fraud to malice to punitive damages without considering the issue of actual damages. Examining Samedan's objection, we note that Samedan objected to *"any* predicate question or damages question on the issue of exemplary or additional damages because there is no basis for such an award." This statement is confusing because the charge did contain an actual damages question on fraud. *See Libhart v. Copeland,* 949 S.W.2d 783, 800 (Tex.App.Waco 1997, no writ) (out-of-pocket measure of damages is appropriate for common law fraud). Further, in its objections Samedan cited *Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex. 1995). However, in *Davis,* the Supreme

---

**17.** Intrastate's proposed question on damages was incorporated without revision into the final version of the charge.

Court held that "recovery of punitive damages requires a finding of an independent tort with accompanying actual damages." *Davis,* 904 S.W.2d at 665. In *Davis,* the Court did not address the issue of whether a charge question on punitive damages must be predicated on a jury's finding that there are actual damages. *Id.* It is further noteworthy that the record does not reflect that Samedan proposed, in any form, a question on punitive damages containing the predicate it now contends was mandatory. Had it done so, it might have been able to better clarify its position to the trial court in such a way that the trial court could have corrected the error if any. In short, Samedan's argument on appeal simply does not correlate with its written objection to the jury charge. *See Payne,* 838 S.W.2d at 241; *see also T.R.S.,* 931 S.W.2d at 758. Therefore, we conclude that Samedan's objection, standing alone was insufficient to direct the trial court's attention to the issue it now raises on appeal. Accordingly, we hold that Samedan failed to preserve error. Samedan's fourth issue is overruled.

### DECEPTIVE TRADE PRACTICES ACT

In its fifth issue, Samedan challenges the jury's finding of liability under the DTPA inasmuch as that finding could be used to support an alternative theory of recovery or might be relevant to the damages question under a *Casteel* analysis. However, we have held that the evidence is sufficient to support the jury's liability finding as to fraud and tortious interference. Further, as we have previously concluded, Samedan failed to preserve error as to a *Casteel* analysis on the damages question. Therefore, we need not address the DTPA as an alternate theory of recovery or as it might relate to damages under *Casteel.*

### PARTIAL REMAND OF TORTIOUS INTERFERENCE CLAIM

Texas Rule of Appellate Procedure 44.1(b) provides that "[t]he court may not order a separate trial solely on unliquidated damages if liability is contested." TEX.R. CIV. P. 44.1(b). If a party files a general denial in the trial court, that pleading puts a plaintiff to his or her proof on all issues, including liability; its effect extends to contesting liability in the event of remand on appeal. *See Estrada v. Dillon,* 44 S.W.3d 558, 562 (Tex.2001). Here, Samedan contested liability by filing a general denial. Moreover, Samedan has contested liability on appeal. Since Rule 44.1(b) proscribes a separate trial on unliquidated damages when liability is contested, we remand the issue of tortious interference liability as well as tortious interference damages.

Accordingly, we *reverse* the judgment of the trial court in part and *remand* for a new trial as to the issue of tortious interference only. In all other respects, the judgment of the trial court is *affirmed.*