**Opinion issued July 31, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00968-CV

———————————

**BEACH CAPITAL PARTNERSHIP, L.P., GARY M. BEACH, PLAYA OIL AND GAS GP LLC, AND PLAYA OIL & GAS LP, Appellants**

**V.**

**DEEPROCK VENTURE PARTNERS LP AND PAUL TOURADJI, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-57962**

---

## O P I N I O N

This appeal arises from a business partnership gone sour. A jury found breaches of fiduciary duties by both sides, breach of a partnership agreement by Beach Capital, and fraud by Gary Beach, chief executive officer of Playa Oil and

Gas LP, the partnership at the heart of the dispute. The trial court's judgment ordered Beach and one of the entities under his control to pay damages, attorney's fees, and costs, and dissolved the partnership. Beach, two of the partners, and the partnership itself appeal, arguing that three portions of the damages award are supported by no or factually insufficient evidence or are unrecoverable as a matter of law and that error in the jury charge demands reversal and partial remand of the case. We affirm.

## Background

### A.     Formation of the partnership

In 2005, Gary Beach, a Houston businessman, and Paul Touradji, a New York hedge fund manager, decided to go into business together. Beach's son, Gentry Beach, worked for Touradji at the time. Gentry introduced Touradji to Beach, and Beach and Touradji began discussions regarding a possible oil and gas exploration partnership.

Beach and representatives of Touradji Capital Management LP, an investment fund managed by Touradji, discussed what Beach described as his best oil and gas prospect, a salt dome in Louisiana known as Bayou Bouillon. Beach claimed to have an agreement with an experienced petroleum engineer, seismic studies, an "engineered" analysis of the reserves, and drilling or leasing rights to the prospect, along with a funding commitment of more than $20 million.

2

Eventually, Beach and Touradji decided to form a partnership, Playa Oil and Gas, LP ("Playa"). A subsidiary of Touradji Capital Management LP, DeepRock Venture Partners, LP, held an 80 percent interest in Playa and agreed to contribute between $8 million and $30 million to Playa. An entity controlled by Beach, Beach Capital Partnership, L.P., held a 19.9% interest and agreed to contribute to Playa all rights, title, and interest in certain oil and gas leases, seismic permits, and options to lease, including Bayou Bouillon. An entity named Playa Oil and Gas GP, LLC, controlled by Beach, held the remaining 0.1% interest as Playa's sole general partner.[1] A written partnership agreement controlled Playa's ownership, activities, and management.

## B. The partnership's business activities

Bayou Bouillon was never developed; Playa's sole attempt to drill there resulted in a "dry hole." Beach began to have second thoughts on the prospect, expressing concerns that Playa was "wasting [its] time," could not afford to spend more money on the project, and should not pursue further drilling of Bayou Bouillon or other prospects. DeepRock's own analysis determined that the prospect was high-risk and would require a three-dimensional seismic study to substantiate the existence of any reserves, at a cost of $15 million to $30 million. DeepRock employees advised Touradji not to drill the prospect and to walk away.

---

[1] For clarity, we will refer to Playa Oil and Gas GP, LLC simply as "the general partner."

3

In early 2008, one company, Energy XXI, expressed interest in jointly drilling a portion of Bayou Bouillon with Playa. Those discussions, however, did not culminate in any agreement. Instead, Playa attempted to sell the prospect to another party, which also ultimately declined to participate. Thus, Bayou Bouillon remained undeveloped.

Meanwhile, DeepRock's leadership became concerned that it might not recover its investment in Playa, which had by then swelled to $41 million. Under the partnership agreement's original terms, DeepRock was entitled to only 80% of any distribution, so DeepRock would not be made whole until Playa distributed at least $51.25 million. DeepRock sought to amend the agreement to provide that DeepRock would be entitled to recover its capital investment before Beach Capital and the general partner received any distribution. Beach, on behalf of Beach Capital, agreed to the amendment and executed an amended partnership agreement. Shortly after the amendment, Playa began selling some of its assets, particularly oil and gas leases in various locations. As a result, in August 2008, Playa had more than $41 million in cash on hand. In accordance with the amended agreement, Playa distributed $41 million to DeepRock, but made no distribution to the other partners. Playa had difficulty selling other properties. Beach estimated that Playa could sell one property for $5 million at auction, but Playa received only one offer, for $100,000. Beach, however, remained upbeat and wrote as late as

August 2008 that he believed Bayou Bouillon alone could be worth a billion dollars.

## C. Breakdown of the partners' relationship

The relationship between the partners degenerated, with Beach and Touradji each coming to believe that the other was stalling on opportunities, withholding information, or otherwise behaving improperly. By September 2008, Beach believed that Touradji was "squeezing" him out of Playa and would not allow him to "get a dime" from the partnership.

In September 2008, Beach proposed making a distribution to the partners. DeepRock opposed Beach's proposal in an email. Nonetheless, Beach distributed $2.5 million to the limited partners. Of this $2.5 million—approximately half of Playa's cash on hand—$2 million went to DeepRock and $500,000 went to Beach Capital. When DeepRock learned of the distribution, it immediately demanded that Beach return the $500,000 distribution he made to Beach Capital, but no part of the $2.5 million distribution was repaid to the partnership. The morning that Beach made the distribution, he emailed DeepRock, purporting to withdraw his consent to the amendment of the partnership agreement on the basis that DeepRock had never signed it.

## D. This litigation begins

Several days later, Beach initiated this action, naming himself, Beach Capital, Playa, and the general partner (collectively, the "Beach parties") as plaintiffs and DeepRock and Touradji as defendants. Beach claimed that DeepRock and Touradji had defrauded him by misleading him into believing that DeepRock would fund drilling at Bayou Bouillon only if Beach consented to the amendment to the partnership agreement. Beach therefore claimed that he was entitled to 20 percent of the $41 million that Playa had distributed to DeepRock, that is, $8.2 million. He also alleged breach of fiduciary duty, breach of contract, tortious interference with existing business relations, and intentional infliction of emotional distress, asserted a claim for punitive damages, and sought a declaration that he alone was entitled to control the general partner and, through it, Playa. Finally, Beach sought injunctive relief to prevent DeepRock or Touradji from interfering with Playa's activities or with the Beach parties' rights.

Shortly after suit was filed, DeepRock executed a written consent adopting the amendment to the partnership agreement. A few days later, at DeepRock's instigation, Playa's management committee met and passed resolutions affirming the effectiveness of the amended partnership agreement and removing Beach from his position as CEO of Playa, replacing him with Bill Moody, Playa's president.

Rather than step down, Beach fired Moody and a number of other Playa executives and senior employees.

Meanwhile, DeepRock and Touradji also requested injunctive relief and filed counterclaims, alleging breach of contract, violation of the Texas Revised Limited Partnership Act, and breach of fiduciary duty. They also requested a declaratory judgment setting forth the parties' respective rights and obligations regarding Playa, its management, the distributions therefrom, the amendment, and related matters. By the time of trial, DeepRock and Touradji had amended their counterclaims to assert them both on their own behalves and derivatively on behalf of Playa. DeepRock and Touradji specifically sought return to Playa of Beach Capital's share of the September 2008 distribution, as well as all other damages proven at trial.

In November 2008, the trial court issued a temporary injunction, secured by a $100 bond, prohibiting certain actions by each of the parties. Among other things, it enjoined Touradji and DeepRock from taking any actions to remove Beach as CEO or otherwise interfering with the operations or management of Playa. Beach thus continued as CEO and paid himself a full salary through the end of the trial. The trial court also enjoined the Beach parties from making any distributions to Playa's partners; marketing, disposing of, or transferring any of Playa's assets; or interfering with DeepRock and Touradji's access to Playa's

books and records. Beach nonetheless destroyed Playa documents, including emails and electronic data, and the trial court temporarily modified the temporary injunction to allow time for DeepRock and Touradji to inspect and copy Playa's documents.

## E. Outcome of the trial

The jury charge included 25 numbered questions, many of which had multiple subparts, for a total of nearly 50 interrogatories. Due to the length of the charge, the parties waived the reading of the charge to the jury that is required by Rules of Civil Procedure 271 and 275.

The jury answered 36 of the interrogatories. It found, among other things, that the original Playa partnership agreement called for an 80-20 split of distributions between DeepRock and Beach Capital, without first guaranteeing that DeepRock would be made whole; the agreement was amended between May 2008 and September 2008; DeepRock did not fraudulently induce Beach Capital to agree to the amendment; DeepRock did not receive any distributions that should have been paid to Beach Capital; DeepRock and Touradji each maliciously or fraudulently breached their fiduciary duties to Playa and to Beach Capital, but no damages were due for those breaches; Beach Capital violated the terms of the partnership agreement, resulting in $855,000 in damages; Beach breached his fiduciary duties to Playa, resulting in $900,000 in damages; Beach defrauded

8

DeepRock, but no damages were due for Beach's fraud; and any damages to DeepRock due to Beach's breach of fiduciary duties or fraud resulted from malice or fraud by Beach.

## F. Post-trial motions and this appeal

The Beach parties filed a series of motions for judgment notwithstanding the verdict, a new trial, and remittitur. Among other arguments, the Beach parties contended in their post-trial motions that the trial court inadvertently omitted portions of Question 15 in the jury charge, which asked the jury to assess damages for DeepRock and Touradji's breach of their fiduciary duties, and the omission caused the rendition of an improper verdict. The trial court denied all of the Beach parties' motions. But the trial court did grant Touradji and DeepRock's motion to disregard the jury's finding that no breach of contract damages resulted from the $2.5 million distribution by Playa in September 2008. The trial court explained that it was not awarding any additional damages, but correcting the judgment to reflect an alternative theory of recovery for the $500,000 that the jury awarded as damages for Beach's breach of fiduciary duties in making the distribution.

The trial court entered judgment on the verdict as modified and awarded Touradji and DeepRock damages, attorney's fees, costs, and pre-judgment and post-judgment interest. Of relevance to this appeal, the judgment included awards to DeepRock for 80% of each amount of Playa's damages found by the jury for

9

Beach's breach of his fiduciary duties, namely the $500,000 that Beach Capital received in the September 2008 distribution, the $300,000 that the jury awarded as damages for Beach's refusal to step down as CEO, and the $100,000 that the jury found as damages for Beach's unauthorized bonuses, plus prejudgment interest on each of those amounts. The judgment further gave Beach Capital an offset for the value of Playa's assets, dissolved Playa, ordered the court-appointed receiver to liquidate all of Playa's assets and distribute the proceeds to DeepRock, and declared that the partnership agreement was validly amended in May 2008 and that the actions taken to fire Beach as CEO in October 2008 were valid corporate acts.

On appeal, the Beach parties raise four arguments. In the first argument, they assert that the trial court erred in awarding damages for the September 2008 distribution to Beach Capital because the award was supported by no or factually insufficient evidence. Second, they argue that the amount that Beach paid to himself as salary while the temporary injunction was in place was not recoverable as a matter of law. Third, they argue that the jury's award of damages for unauthorized bonuses that Beach paid to himself was supported by no or factually insufficient evidence. Finally, the Beach parties argue that the trial court erred by denying their motion for a new trial on damages, because Question 15 of the verdict form included only the instructions, omitting the question itself and resulting in an improper verdict.

10

**Legal and factual sufficiency of the evidence**

In their first and third issues, the Beach parties argue that portions of the jury's damages award were supported by legally or factually insufficient evidence.

**A.      Standard of Review**

To determine whether legally sufficient evidence supports the judgment, this court must look at all of the evidence admitted and determine whether, after disregarding all evidence that a reasonable trier-of-fact could disregard, more than a scintilla of evidence supports the judgment. *City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005). To determine the factual sufficiency of the evidence, we are required to examine all of the evidence, and we will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The trier of fact may choose to "believe one witness and disbelieve others" and "may resolve inconsistencies in the testimony of any witness." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

**B.      Damages for the September 2008 distribution to Beach Capital**

The Beach parties argue that factually or legally insufficient evidence supports the trial court's award to DeepRock of $500,000, which represents 20% of the $2.5 million distribution that Beach made in September 2008. According to the Beach parties, this award was improper because the distribution did not harm

Playa, nor did it harm DeepRock and Touradji, which retained 80% of the distribution. In this view, Touradji and DeepRock had already received everything to which they were entitled—the $41 million invested by DeepRock and 80% of the September 2008 distribution—and the judgment unjustly enriches them by awarding an additional windfall which they would not otherwise have received. In other words, the jury's award places DeepRock in a better position than if the distribution had never been made. According to the Beach parties, the $500,000 received by Beach Capital and the $2 million received by DeepRock would have been distributed to the partners in the same proportions when Playa inevitably wound down its operations, and there was no legally or factually sufficient evidence that its distribution harmed DeepRock or Touradji. Notably, Beach and Beach Capital do not challenge the liability findings—breach of fiduciary duty and breach of the partnership agreement—underlying this damages award.

We first note that the jury award in question was for "[t]he economic loss . . . caused to Playa LP as a result of the distribution of money from Playa LP to Beach Capital without DeepRock's consent." In other words, the jury was not asked to award Beach Capital's share of the distribution to DeepRock, nor did it directly determine the damages suffered by DeepRock or Touradji. Rather, it assessed the damages caused *to Playa* by the distribution. It assessed that amount at $500,000. Because the trial court simultaneously awarded damages and ordered

12

the dissolution of the partnership, it awarded 80% of the jury's award, or $375,000, directly to DeepRock as the majority partner. Contrary to the Beach parties' arguments, the trial court awarded this amount solely to DeepRock, not jointly to DeepRock and Touradji.

We conclude that we must reject the Beach parties' argument because sufficient evidence supports the award. Beach himself testified that he knew that his actions in making the September 2008 distribution "probably" violated the partnership agreement. Further, the evidence at trial, including Beach's own testimony, showed that this distribution impaired Playa's ability to meet its financial obligations, such as payroll expenses. Obviously, the distribution itself directly reduced Playa's assets. Moreover, Beach testified that Playa had essentially no value at the time of trial, with only a relatively small amount of cash on hand and a few about-to-expire leases. While the parties disputed why Playa lost value, they agree that it had significantly more value—including both cash and physical assets potentially worth millions of dollars—in the summer of 2008 than it did afterwards. Additional evidence showed that, as of the time that Beach distributed the $2.5 million, DeepRock and Touradji himself had not decided whether to sell Playa or attempt to develop it. A reasonable jury could have believed this evidence and found, as Beach admitted at trial, that the $2.5 million distribution effectively rendered Playa insolvent and that Playa sustained at least

13

$500,000 in damages as a result. *McGalliard*, 722 S.W.2d at 697; *City of Keller*, 168 S.W.3d at 827–28.

The Beach parties further argue that the judgment must be reversed because DeepRock and Touradji requested damages for Beach's breach of his fiduciary duties on behalf of Playa, but the judgment awarded these damages directly to DeepRock and Touradji. This argument ignores the fact that the judgment dissolved Playa and ordered Playa's receiver to distribute all remaining assets to DeepRock. *See* TEX. BUS. ORGS. CODE ANN. § 153.405 (West 2014) (when plaintiff prevails in derivative action, trial court may direct which party shall receive recovered proceeds). Accordingly, the trial court awarded to DeepRock its share of the jury's $500,000 award for damages to Playa, or $375,000, plus interest on that amount. That the award was direct, rather than passing through the hands of the receiver, has no practical impact, nor was it improper. *See id.* And, contrary to the Beach parties' assertions, the trial court awarded this amount solely to DeepRock, not to DeepRock and Touradji. The award is thus entirely consistent with a payment of $500,000 to Playa and its simultaneous distribution to Playa's partners. The trial court did not err in awarding this amount directly to DeepRock, particularly in light of the unchallenged judgment that all of Playa's remaining assets be distributed immediately to DeepRock. *See id.*

14

We hold that the jury's award of damages against Beach for his breach of fiduciary duty in making the September 2008 distribution was supported by legally and factually sufficient evidence. We therefore overrule the Beach parties' first issue.

## C.    Damages for Beach's unauthorized bonuses

In their third issue, the Beach parties complain that the jury award of $100,000 for "the economic loss caused to Playa LP as a result of Beach paying himself unauthorized bonuses" is not supported by the record. Specifically, they argue that the only evidence at trial was that the bonuses in question were authorized and that there was no evidence that the bonuses were unauthorized, or that any such evidence was legally or factually insufficient. They do not challenge the amount of the award itself, but only the finding that the bonuses were unauthorized.

As support, the Beach parties rely entirely upon Beach's own testimony that the parties had agreed that his total compensation would be $250,000 per year and that he discussed this amount with his son and DeepRock employees Chuck Ray and Holbrook Dorn each year. In the same line of questioning, however, Beach stated that he did not remember how his compensation was allocated between salary and bonus. He later stated that he "did not recall taking a bonus" at all in 2007.

15

Other evidence tended to show that Beach took bonuses of $77,000 in 2007 and $80,000 in 2008. The trial record also contains Playa's auditors' records, which showed approximately $330,000 in compensation to Beach in 2008, approximately $80,000 of which was a bonus. Beach disputed these records and insisted that he received only $250,000 in compensation that year. Playa's auditor testified that he asked each year for all Playa minutes or other records authorizing the payment of bonuses and was told each year that no such records existed. Beach himself admitted that Gentry Beach, the most senior DeepRock employee with whom Beach claims to have discussed his compensation, had no authority to make any significant decisions regarding Playa, explaining that "Paul Touradji made all the major decisions because [DeepRock employees] always requested Paul Touradji to sign off on anything of significance." DeepRock employee Anthony Schweinzer, another of the people with whom Beach interacted regarding Playa, testified, "[A]ny decisions as to what to do with the partnership were always done at the end of the day by Paul Touradji."

This evidence was sufficient to permit a reasonable juror to conclude that Beach was paid bonuses in 2007 and 2008, and that such bonuses totaled at least $100,000. Further, the evidence was sufficient to permit the jury to conclude that Beach's bonuses required DeepRock authorization, but Gentry Beach, Ray, and Dorn lacked authority to authorize them. The jury was free to disbelieve Beach's

16

testimony that those individuals authorized his compensation and instead believe those witnesses who testified that Touradji himself made all decisions of significance to Playa. *McGalliard*, 722 S.W.2d at 697. Beach's own testimony was internally contradictory, as he simultaneously could not recall the amount and nature of his compensation in some years but also insisted that it was $250,000 every year. Further, that testimony was contradicted by Playa's auditor's testimony and records. The jury could have disregarded those portions of Beach's testimony that conflicted with this evidence. *E.g.*, *City of Keller*, 168 S.W.3d at 827–28.

We hold that more than a scintilla of evidence supported the jury's verdict that Beach took unauthorized bonuses, in violation of his fiduciary duties, and that those bonuses caused $100,000 in economic loss to Playa. Because more than a scintilla of evidence supports the verdict, we overrule the Beach parties' third issue.

### Jury charge error

The Beach parties' two remaining issues relate to the jury charge. First, the Beach parties argue that the trial court erred in asking the jury to assess damages for amounts paid to Beach as salary during the period covered by the temporary injunction. Second, they argue that the omission of the interrogatory from

17

Question 15 in the jury charge probably resulted in an improper judgment and requires a new trial on damages.

## A.    Standard of Review

All objections to a jury charge must be "presented to the [trial] court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury." TEX. R. CIV. P. 272. "All objections not so presented shall be considered as waived." *Id.* "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." *Id.*

The error preservation requirements of Rule 274 apply to incorrect measures of damages, just as to other aspects of the jury charge. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387 (Tex. 2000). When a party fails to object to an instruction that permits a jury to award damages that are unrecoverable as a matter of law, the objection is waived. TEX. R. CIV. P. 274; *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988) (objection to unrecoverable portion of attorney's fees award waived when defendants failed to object to charge); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (same); *KMG Kanal–Muller–Gruppe Deutschland GMBH & Co. KG v. Davis*, 175 S.W.3d 379, 393 (Tex.

18

App.—Houston [1st Dist.] 2005, no pet.) (appellant who failed to object to incorrect measure of damages in charge waived error); *Success Motivation Inst., Inc. v. Lawlis*, 503 S.W.2d 864, 867 (Tex. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (same); *see also Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 747 (Tex. App.—Waco 2002, no pet.) (same).

## B.    Damages for Beach's salary from October 2008 through trial

In their second issue, the Beach parties argue that DeepRock was not entitled to recover for the amounts taken by Beach as salary during the period in which the temporary injunction was in effect. The temporary injunction, which was entered in October 2008, prohibited Touradji and DeepRock from taking any actions to remove Beach as CEO or otherwise interfering with the operations or management of Playa. According to the Beach parties, the jury's award of damages to DeepRock has the effect of overriding the trial court's application of the law in issuing a temporary injunction. Therefore, the Beach parties argue that the jury charge was improper because it submitted to the jury a legal question already decided by the trial court when it issued the temporary injunction.

"Any complaint as to a question, definition, or instruction [in the jury charge], on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. Likewise, when a party requests and relies on an instruction, question, or definition, but the trial

19

judge refuses the request or modifies the requested language, the requesting party must obtain the trial judge's endorsement of the request to preserve error. TEX. R. CIV. P. 276; *see also First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 474–75 (Tex. 2004) (explaining and comparing Rule 274 and Rule 276, both of which require complaining party to object in order to preserve error); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007) (Rule 274 requires party to object to preserve error); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) ("There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.").

The Beach parties did not object to the submission of Question 21, the damages question related to DeepRock and Touradji's claim for breach of fiduciary duty, prior to the question's submission to the jury. Nor did they object to part (d) of that question, which related specifically to damages resulting from Beach's refusal to step down as CEO of Playa. Indeed, neither the parties nor the trial court mentioned this question or the injunction at all during the charge conference.[2]

---

[2] We note that Texas law does provide means by which a party may recover damages caused by a wrongful injunction. Specifically, a wrongfully enjoined party may bring either a suit upon the bond filed by the injunction plaintiff or a claim for malicious prosecution. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685–86 (1990).

Because the Beach parties did not timely object to the submission of the damages question related to Beach's refusal to step down, they waived any error therein. *See* TEX. R. CIV. P. 274; *Martin*, 144 S.W.3d at 474–75; *Ledesma*, 242 S.W.3d at 43; *Payne*, 838 S.W.2d at 241. We overrule the Beach parties' second issue.

## C. Omission of the interrogatory in Question 15

Finally, the Beach parties argue that the omission of the interrogatory from Question 15 of the verdict form probably caused the rendition of an improper judgment because the evidence at trial demonstrated that Beach Capital was entitled to damages for Touradji's and DeepRock's breach of their fiduciary duties, but the jury awarded zero damages.

The jury first determined, in response to Question 14, that Touradji and DeepRock breached their fiduciary duties. The following question, Question 15, asked the jury to assess damages, if any, to Beach Capital for any breaches of those duties. Beach's counsel, Robert Theriot, argued at length to the jury regarding Questions 14 and 15, occupying two pages of the transcript, identifying both questions by number, and concluding:

> The evidence only admits, therefore, of one answer, for breach of these duties, the value of Playa, the 74 million-dollar value was destroyed. Beach Capital's 20 percent share of that is $14.8 million. That's what we're asking you to award for the breach of the fiduciary duties.

Counsel for Touradji and DeepRock argued at even greater length regarding these questions, spanning almost five pages of the transcript, and asked the jury to find that Beach had not proven that Touradji or DeepRock breached any fiduciary duties or, even if they had, the proper amount of damages was zero.

The actual interrogatory for Question 15, however, was omitted entirely. The verdict form included only the instructions, as follows:

QUESTION NO. 15

Answer the following questions [sic] only if you answered "Yes" to any subpart of Question No. 14. Otherwise, do not answer the following questions [sic].

The measure of damages, if any, should be measured by Beach Capital's share of the value of the partnership that was lost because of Paul Touradji or DeepRock's failure to comply with their fiduciary duties.

Answer: (give amount in dollars and cents) $_____.

The jury found both defendants liable for breach of fiduciary duties, answering "Yes" to both subparts of Question 14, and answered zero for Question 15.

In post-trial motions, Beach raised this issue, presenting an affidavit by Theriot, who asserts that Question 15 should have read as follows:

QUESTION NO. 15

Answer the following question only if you answered "Yes" to any subpart of Question No. 14. Otherwise, do not answer the following questions [sic].

What amount of money, if any, if paid now in cash, would fairly and reasonably compensate Beach Capital for its damages, if any, that

22

resulted from Paul Touradji's or DeepRock's failure to comply with their fiduciary duty?

> The measure of damages, if any, should be measured by Beach Capital's share of the value of the partnership that was lost because of Paul Touradji or Deep Rock's failure to comply with their fiduciary duties.

Answer: (give amount in dollars and cents) $_____.

According to Theriot, the parties used this version of the question during the formal charge conference, and the court intended to submit it as written. Theriot himself presented this version, excluding the predicate in the first paragraph, "verbatim" to the jury on a PowerPoint slide during his closing argument.

The Beach parties admit that they did not object to the omission in Question 15 until after the jury returned its verdict and was dismissed by the trial court. They argue that this failure to object does not constitute waiver under Rules of Civil Procedure 272 and 274, however, because they were not given a reasonable time to review the charge before its reading to the jury. The final version of the charge was emailed to all counsel while counsel was in court, shortly before the jury returned for the charge and closing arguments.[3]

---

[3] DeepRock and Touradji claim on appeal that the trial court also distributed physical copies and that counsel had computers at their tables in the courtroom, so the Beach parties had a reasonable opportunity to review the final version of the verdict form. The record is silent on these facts, so we may not consider them in our decision. *E.g.*, *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Although counsel for the Beach parties had not read the final version of the charge before the trial court charged the jury, both sides waived a formal reading of the questions and instructions applicable to each question, which otherwise is required by Rules of Civil Procedure 271 and 275. Rule 271 provides, "[u]nless expressly waived by the parties, the trial court shall prepare and in open court deliver a written charge to the jury." Rule 275 requires that, "[b]efore the argument is begun, the trial court shall read the charge to the jury in the precise words in which it was written, including all questions, definitions, and instructions which the court may give."

The parties do not identify any authority for the proposition that error in the charge is not waived if the error is introduced after the formal charge conference but before the charge is read to the jury. Nor have we found such authority. On the contrary, the plain language of Rules 272 and 274 states that such errors are waived if they are not presented to the trial court before the reading of the charge. Waiving the reading of the charge does not alleviate this burden. Indeed, one of the benefits of formally reading the charge is to detect inadvertent errors that somehow find their way into the final draft of the charge. Our Rules of Civil Procedure expressly contemplate that the jury may request clarification of the charge or additional instructions. TEX. R. CIV. P. 285. Further, on the motion of any party or on the trial court's own motion, the trial court may supplement its

24

instructions "touching any matter of law." TEX. R. CIV. P. 286. Neither the jury nor any party requested clarification of Question 15, even though the jury deliberated over the course of two days. Had the error been detected before the jury was dismissed, it would have been easily remedied.

Under these facts, we hold that the Beach parties have waived the trial court's error in omitting the interrogatory in Question 15 by failing to object before the reading of the charge, by waiving the reading itself, and by failing to object at any time during the jury's deliberations or before the jury was discharged, when the verdict form could still have been inspected. *See* TEX. R. CIV. P. 272, 274; *KMG*, 175 S.W.3d at 393.

## Conclusion

Because we find no reversible error, we affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

25